# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THE MEGA COMPANY
2415 Foxhall Road, N.W.
Washington, DC 20007,

                Plaintiff,

                v.

MATERIAS PRIMAS SECUNDARIAS, S.A.
Ctra. Majadahonda 50
C.C. El Palacio, Oficina 0
Boadilla del Monte
28660 Madrid, Spain,

                Defendant.

Civil Action No. _____

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, The Mega Company ("Mega"), by its undersigned counsel, brings this declaratory judgment complaint against Defendant, Materias Primas Secundarias, S.A. ("MPS"), and respectfully alleges as follows:

### NATURE OF THE CASE

       1.       This is an action arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

       2.       Mega and MPS executed two Cooperation and Commission Agreements (collectively the "Commission Agreements"), one dated October 5, 2012 (the "October 5 Agreement") and the other dated October 10, 2012 (the "October 10 Agreement") for the sale of pyrite ash in Spain to Aria International GmbH, a company located in Hamburg, Germany, and/or its affiliates ("Aria").

3.      In Count I, Mega seeks a declaration that, despite MPS's statements to the contrary, the Commission Agreements are valid and binding agreements, enforceable against Mega and MPS according to their terms.

4.      In Count II, Mega seeks a declaration that the condition precedent to the extension of the exclusivity clause in the Commission Agreements has been satisfied and that Mega now has an indefinite and exclusive right to broker the sale of the pyrite ash by MPS to Aria.

## THE PARTIES

5.      Plaintiff, The Mega Company, is a corporation formed in 1983 under the laws of the District of Columbia and headquartered in the District of Columbia.

6.      Upon information and belief, Defendant, Materias Primas Secundarias, S.A., is a business entity organized and existing under the laws of Spain, with a place of business at Ctra. Majadahonda 50, C.C. El Palacio, Oficina 0, Boadilla del Monte, 28660 Madrid, Spain.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332, 28 U.S.C. § 2201 and 28 U.S.C. § 2202. The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the parties are of diverse citizenship.

8.      This Court has personal jurisdiction over MPS pursuant to DC Code Ann. § 13-423(a)(1) because MPS has transacted business in the District of Columbia, negotiated the Commission Agreements in the District of Columbia, and sent representatives to the District of Columbia to conduct business on its behalf.

9.      Venue is proper in this district under 28 U.S.C. § 1391.

## BACKGROUND FACTS COMMON TO ALL CLAIMS FOR RELIEF

10.     Pyrite ash is a hematite-rich waste product of sulfate, which is valuable on the world commodities market.  Pyrite ash also has been referred to by MPS, Mega, and Aria as roasted pyrite, iron ore fines, and calcined pyrites.

11.     MPS is the owner of a stockpile of approximately 2.7 million metric tons of pyrite ash in Tharsis, Spain and the surrounding areas (the "Tharsis Pyrite").

12.     Under the October 5 Agreement, MPS agreed to give Mega the exclusive right to broker a deal for the sale of the Tharsis Pyrite by MPS to Aria. The October 5 Agreement is attached as **Exhibit A.**

13.     The October 5 Agreement provides that Mega will receive a commission of $5.25 USD per metric ton of the Tharsis Pyrite that is sold to Aria.

14.     In addition to the Tharsis Pyrite, MPS is the owner of a stockpile of approximately 600,000 metric tons of pyrite ash in Punta del Sebo and the surrounding areas of Huelva, Spain (the "Punta del Sebo Pyrite").

15.     Under the October 10 Agreement, MPS agreed to give Mega the exclusive right to broker a deal for the sale of the Punta del Sebo Pyrite by MPS to Aria. The October 10 Agreement is attached as **Exhibit B.**

16.     The October 10 Agreement provides that Mega will receive a commission of $5.75 per metric ton of the Punta del Sebo Pyrite that is sold to Aria.

17.     Both Commission Agreements contain an exclusivity clause, which provides in pertinent part:

> MPS shall give exclusivity to Mega to sell the [Tharsis/Punta del Sebo] Pyrite and other secondary raw materials to [its] Client Aria International and/or its affiliate[s] … for a period of one (1) year, whose term shall be automatically extended once the business commences with the parties identified herein.

18.     The Commission Agreements were signed by Chang S. Oh Turkmani on behalf of Mega and by Eckart Sitz on behalf of MPS.

19.     Relying on the Commission Agreements, Mega brokered the sale of the Tharsis Pyrite and the Punta del Sebo Pyrite by MPS to Aria.

20.     On October 8, 2012, MPS, Aria, and Mega entered into an Offer to Sell Iron Ore Fines, which set forth the basic terms of a transaction whereby Aria would purchase 2.7 million wet metric tons of the Tharsis Pyrite and the Punta del Sebo Pyrite from MPS. The Offer to Sell Iron Ore Fines was signed by Chang S. Oh Turkmani on behalf of Mega, by Eckart Sitz on behalf of MPS, and by Alireza Roodsari on behalf of Aria.  The Offer to Sell is attached as **Exhibit C**.

21.     Mega then brokered a Contract for Sale and Purchase of Calcined Pyrites between MPS and Aria dated December 12, 2012 ("Punta del Sebo Sale Contract"), which provided Aria with the exclusive right to purchase the Punta del Sebo Pyrite from MPS, and a Contract for Sale and Purchase of Calcined Pyrites between MPS and Aria dated January 18, 2013 ("Tharsis Sale Contract"), which provided Aria with the exclusive right to purchase the Tharsis Pyrite from MPS. Copies of the Punta del Sebo Sale Contract and the Tharsis Sale Contract are attached as **Exhibit D** and **Exhibit E** respectively.

22.     The Punta del Sebo Sale Contract and the Tharsis Sale Contract each contain an "Imperative Clause" stating that MPS's obligation to sell the Punta del Sebo Pyrite and the Tharsis Pyrite to Aria is conditioned on Mega agreeing in writing to reduce its commission under the Commission Agreements from $5.25 (October 5) and $5.75 (October 10) to $1.00 USD per dry metric ton.

4

23.     By including the "Imperative Clauses" in the Tharsis Sale Contract and the Punta del Sebo Contract, and refusing to sell or ship the Tharsis Pyrite or the Punta del Sebo Pyrite to Aria unless Mega agreed to accept a lower commission from MPS, MPS induced Aria to convince Mega to reduce the commission paid by MPS to Mega on the sale of the Tharsis Pyrite and the Punta del Sebo Pyrite from MPS to Aria. Mega was not a party to the Tharsis Sale Contract or the Punta del Sebo Contract.

24.     Mega and/or its affiliates have served as the broker for both the seller of the Tharsis Pyrite and the Punta del Sebo Pyrite, MPS, and the buyer of the Tharsis Pyrite and the Punta del Sebo Pyrite, Aria. On January 12, 2013, an affiliate of Mega, Beaumont Investments Ltd. ("Beaumont"), entered into a Cooperation and Commission Agreement with Aria, whereby Beaumont would serve as the exclusive broker for the purchase of the Tharsis Pyrite and the Punta del Sebo Pyrite (the "January 12 Agreement"). The January 12 Agreement provides that Beaumont will receive a commission of $4.00 USD per dry metric ton for the Tharsis Pyrite and Punta del Sebo Pyrite that is purchased by Aria from MPS and shipped or sold by MPS to Aria. A copy of the January 12 Agreement is attached as **Exhibit F**.

25.     Both before and after entering into the January 12 Agreement, Aria informed MPS that, in order to induce Mega to satisfy the Imperative Clauses, Aria would pay Mega or an affiliate of Mega $4.00 USD per dry metric ton for the Tharsis Pyrite and the Punta del Sebo Pryite. Mega also informed MPS that Mega would agree to reduce its commission under the Commission Agreements to $1.00 USD per dry metric ton, but in the same communication indicated that Aria would also pay a commission of $4.00 USD per dry metric ton to an affiliate of Mega.

26.     On April 17, 2013, Mega agreed in writing (the "April 17 Letter Agreement") to reduce its commission received from MPS for the sale of the Tharsis Pyrite and the Punta del Sebo Pyrite by MPS to Aria to $1.00 USD per dry metric ton, as required by the "Imperative Clauses." The April 17 Letter Agreement was addressed and delivered to MPS. A copy of the April 17 Letter Agreement is attached as **Exhibit G**.

27.     Independently, and by and through its counsel, MPS has stated to Mega that it believes that the Commission Agreements are not legally binding or enforceable agreements. By letter to Mega's counsel dated May 9, 2013, MPS's counsel asserted that the Commission Agreements are not legally binding or enforceable agreements and indicated that MPS does not intend to abide by their terms.

28.     Mega and MPS entered into the Commission Agreements in October 2012. Mega has fulfilled all of its obligations under the Commission Agreements by brokering the sale of the Tharsis Pyrite and the Punta del Sebo Pyrite by MPS to Aria, as evidenced by the Offer to Sell Iron Fines, the Tharsis Sale Contract and the Punta del Sebo Sale Contract. Mega has also satisfied the "Imperative Clauses" of the Tharsis Sale Contract and the Punta del Sebo Sale Contract by agreeing in writing to reduce its commission received from MPS on the sale of the Tharsis Pyrite and the Punta del Sebo Pyrite to $1.00 USD per dry metric ton.

29.     Nonetheless, MPS has repeatedly taken the position that the Commission Agreements are no longer valid and enforceable and informed Mega that Mega no longer has a right under the exclusivity clause to broker the sale of the Tharsis Pyrite or the Punta del Sebo Pyrite by MPS to Aria.

## COUNT I:
## DECLARATORY JUDGMENT FOR VALIDITY OF COMMISSION AGREEMENTS

30.     Mega repeats and realleges each allegation in paragraphs 1 - 29.

31.     Mega is entitled to a declaration that the October 5 Agreement and the October 10 Agreement are valid, enforceable, and binding contracts.

32.     An actual case or controversy currently exists between Mega and MPS in that MPS contends that the October 5 Agreement and the October 10 Agreement are null and void while Mega contends that they are valid, binding, and enforceable contracts.

33.     As a consequence of its contention that the October 5 Agreement and the October 10 Agreement are unenforceable, MPS has refused to recognize that Mega has the exclusive right to broker the sale of the Tharsis Pyrite and the Punta del Sebo Pyrite to Aria, and has refused to ship the Tharsis Pyrite and the Punta del Sebo Pyrite to Aria pursuant to the Tharsis Sale Contract or the Punta del Sebo Sale Contract. MPS has also failed to pay Mega the commissions it has earned pursuant to the October 5 Agreement and the October 10 Agreement, and prevented Beaumont from receiving its commission from Aria.

34.     If MPS refuses to acknowledge the existence of a valid and enforceable contract, Mega will imminently suffer injury in the form of the inability to fulfill the needs of its client, Aria, despite Mega's significant efforts to fulfill its obligations under the Commission Agreements.

35.     The injury that Mega will suffer is imminent because, with each passing day, MPS could ship the Tharsis Pyrite or the Punta del Sebo Pyrite to Aria and ignore its commission obligations to Mega, or sell the Tharsis Pyrite or the Punta del Sebo Pyrite to a third-party other than Aria, even though Mega has the exclusive right to broker the sale of the Tharsis Pyrite and the Punta del Sebo Pyrite to Aria, and Mega has relied on the Commission Agreements by brokering the exclusive sale of the Tharsis Pyrite and the Punta del Sebo Pyrite to Aria from MPS.

077a4f330b3d3f8d

36.     If MPS refuses to acknowledge the existence of the Commission Agreements, the Tharsis Pyrite and the Punta del Sebo Pyrite will be sold to a third party other than Aria, Mega will not be able to recover the Tharsis Pyrite or the Punta del Sebo Pyrite for sale to Aria, Mega will lose its commission under the Commission Agreements and Beaumont, Mega's affiliate, will lose its commission under the January 12 Agreement.

## COUNT II
## DECLARATORY JUDGMENT FOR SATISFACTION OF EXCLUSIVITY CLAUSE

37.     Mega repeats and realleges each allegation in paragraphs 1 - 36.

38.     MPS and Mega agreed that the October 5 Agreement and the October 10 Agreement each give Mega the exclusive right to sell the Tharsis Pyrite and the Punta del Sebo Pyrite to Aria "for a period of one (1) year, whose term shall be automatically extended once the business commences with the parties identified herein."

39.     The parties contemplated by the exclusivity clause are MPS and Aria.

40.     With the assistance and brokerage of Mega, MPS and Aria entered into the Offer to Sell Iron Fines, the Tharsis Sale Contract and the Punta del Sebo Sale Contract, whereby MPS would sell the Tharsis Pyrite and the Punta del Sebo Pyrite exclusively to Aria.

41.     The "Imperative Clause" in the Tharsis Sale Contract and in the Punta del Sebo Sale Contract conditioned the exclusive sale of the Tharsis Pyrite and the Punta del Sebo Pyrite from MPS to Aria on Mega agreeing in writing to reduce its commission received from MPS on the sale to $1.00 USD per dry metric ton.

42.     The condition precedent of the "Imperative Clauses" has been satisfied because Mega agreed in the April 17 Letter Agreement to reduce its commission from MPS on the sale of the Tharsis Pyrite and the Punta del Sebo Pyrite to $1.00 USD per dry metric ton. As a result, business has commenced between MPS and Aria.

8

43.     A case or controversy currently exists between MPS and Mega in that MPS has expressed to Mega the contention that the Commission Agreements are not valid and enforceable and that Mega does not have an exclusive right to broker the sale of the Tharsis Pyrite or the Punta del Sebo Pyrite under the exclusivity clause because no business has commenced between MPS and Aria. By contrast, Mega contends that the Commission Agreements are valid and enforceable and that Mega does have an indefinite, exclusive right to broker the sale of the Tharsis Pyrite and the Punta del Sebo Pyrite to Aria.

44.     The injury that Mega will imminently suffer without a declaratory judgment is that it will lose the ability to continue to market and broker the sale of the Tharsis Pyrite and Punta del Sebo Pyrite, as it has the legal right to do under the Commission Agreements for an indefinite period of time.

45.     If MPS refuses to acknowledge the existence of Mega's indefinite, exclusive right to broker the sale of the Tharsis Pyrite and Punta del Sebo Pyrite, the Tharsis Pyrite and the Punta del Sebo Pyrite will be sold to a third party other than Aria, Mega will not be able to recover the Tharsis Pyrite or the Punta del Sebo Pyrite for sale to Aria, Mega will lose its commission under the Commission Agreements, and Beaumont, Mega's affiliate, will lose its commission under the January 12 Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Mega seeks judgment in its favor and against MPS as follows:

a)  A declaration in favor of Mega that the October 5, 2012 Cooperation and Commission Agreement between Mega and MPS is a valid, binding, and enforceable contract;

b)  A declaration in favor of Mega that the October 10, 2012 Cooperation and

Commission Agreement between Mega and MPS is a valid, binding, and enforceable

contract;

c)  A declaration in favor of Mega that the condition precedent for the extension of the

exclusivity clause of the October 5, 2012 Cooperation and Commission Agreement

between Mega and MPS has been satisfied and that Mega has an indefinite,

exclusive right to broker the sale of the Tharsis Pyrite to Aria;

d)  A declaration in favor of Mega that the condition precedent for the extension of the

exclusivity clause of the October 10, 2012 Cooperation and Commission Agreement

between Mega and MPS has been satisfied and that Mega has an indefinite,

exclusive right to broker the sale of the Punta del Sebo Pyrite to Aria; and

e)  Such other, further, additional relief as the Court deems equitable and proper.

Dated: May 24, 2013

Respectfully submitted,

**Arent Fox LLP**

By:/s/ Randall A. Brater
Randall A. Brater (D.C. Bar No. 475419)
Karen S. Vladeck (D.C. Bar No. 1000311)
Arent Fox LLP
1717 K Street, N.W.
Washington, DC 20036
Telephone: (202) 857-6000
Facsimile: (202) 857-6395

***Counsel for Plaintiff The Mega Company***